383 P.2d 116

**STATE of Arizona, Appellee,**

**v.**

**Anthony IZZO, Appellant.**

**No. 1221.**

Supreme Court of Arizona.

En Banc.

June 27, 1963.

Robert K. Corbin and Donald D. Holroyd, Phoenix, for appellant.

Robert W. Pickrell, Atty. Gen., Ross Anderson, Asst. Atty. Gen., and Charles N. Ronan, County Atty. of Maricopa County, for appellee.

STRUCKMEYER, Justice.

Anthony Izzo was tried and convicted of First Degree Murder in the shooting of his wife, Maureen. From the verdict, judgment and sentence of life imprisonment and from the denial of his motion for new trial, he appeals to this Court.

On December 14, 1960, the body of Maureen Izzo was found in their apartment in Phoenix. She had been shot twice in the chest. Defendant Izzo was found unconscious lying across her body. He also had two bullet wounds in the chest. At the trial the only direct testimony as to what happened came from the lips of the defendant who took the stand in his own behalf. He told of an accidental shooting arising out of a struggle for the gun, originally in the possession of Maureen; that as he tried to get the gun from her control, he was shot twice; that on the second shot he wrested the gun from her and fell back, hitting a wall as he fell; that the gun went off as he hit the wall and Maureen cried out; and that he then fell forward, blacking out. While he could not explain the second shot in Maureen's body, defendant theorized

that it must have occurred as he lost consciousness. The jury apparently did not believe this account of an accidental shooting since it returned a verdict of First Degree Murder.

During the trial a police officer and a nurse testified to affirmative nods and grunts which defendant made in response to questions by the officer asking Izzo if he had shot himself and his wife. These questions were asked of Izzo at the hospital before he underwent surgery to repair the gunshot wounds some hours after the shooting.

Defendant assigns as error the trial court's refusal to grant a hearing outside the presence of the jury to allow defendant to rebut the prima facie showing of voluntariness of the answers to the officer's questioning. This right is claimed on the basis that defendant's nods and utterances were a confession, requiring this special procedure before being admitted into evidence. State v. Pulliam, 87 Ariz. 216, 349 P.2d 781. But we do not think the responses to the officer's questions amounted to a confession of guilt to the charge of murder.

"A 'confession,' in a legal sense, is retricted to an acknowledgement of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt can be inferred. * * *" State v. Romo, 66 Ariz. 174, 185 P.2d 757.

The admissions by defendant that he shot his wife and shot himself are independent statements from which guilt might, but need not, be inferred. They alone do not establish the homicide as being unlawful. That defendant shot his wife and himself, if true, does not preclude a finding by the jury consistent with his testimony at the trial that the homicide was either accidental or justifiable. The mere fact of an admission to a shooting does not amount to a confession of guilt to murder. People v. Bjornsen, 79 Cal.App.2d 519, 180 P.2d 443.

Defendant complains of the admission of certain testimony of a police officer who attempted to question him the next morning after the surgery. The officer testified that he attempted to ask defendant questions concerning the homicide and that defendant refused to answer. No particular questions were alluded to. The trial court on being informed that defendant refused to answer the questions on advice of counsel and after consideration refused to grant a mistrial but did order the testimony stricken, admonishing the jury:

"A defendant, under those circumstances, has a legal right to refuse to answer questions, and you couldn't take it as evidence of his guilt."

In certain instances silence does amount to an admission against interest, Terrasas v. State, 25 Ariz. 476, 219 P. 226, but not where it is on the advice of counsel. Commonwealth v. Burke, 339 Mass. 521, 159 N.E.2d 856, 77 A.L.R.2d 451; cf. State v. Garaygordobil, 89 Ariz. 161, 359 P.2d 753. Here, the nature of the testimony coupled with the court's action in ordering the officer's testimony on this point stricken and carefully admonishing the jury to absolutely disregard it was sufficient to neutralize any unfavorable inference which might have otherwise been drawn. McCann v. State, 20 Ariz. 489, 182 P. 96; cf. State v. Preis, 89 Ariz. 336, 362 P.2d 660, cert. denied 368 U.S. 934, 82 S.Ct. 372, 7 L.Ed. 2d 196.

Defendant further assigns as error the admission of testimony concerning the conduct of Maureen Izzo on the night before the shooting. A close friend was allowed to testify that Maureen stayed overnight at her home and did not go back to the apartment. Defendant claims that any testimony of the fact is inadmissible because the conduct itself would be hearsay that is it would infer the state of mind of the deceased, fear to go home, when there was no way to cross-examine her as to her actual motive in staying overnight at her friend's house. It is not urged that the testimony was otherwise inadmissible. The conduct is not hearsay. It is some evidence of the state of mind of the deceased the night before her death. Where the state of mind or feelings are an issue, evidence of actions and declarations at or near the time may be indicative thereof. Richfield Oil Co. v. Estes, 55 Ariz. 81, 98 P.2d 851; cf. Richardson v. State, 34 Ariz. 139, 268 P. 615; See also Udall, Arizona Law of Evidence 353 § 173; Brown, The Hearsay Rule in Arizona, 1 Arizona Law Review 1; 6 Wigmore on Evidence § 1789 (3rd Ed.).

In the leading case, Hurst v. State, 101 Miss. 402, 58 So. 206, it was held that a defendant should have been allowed to testify that he had been told of threats made against him by another. The testimony was not admitted to establish the truth of the contents of the statements but only as evidence of the defendant's state of mind, namely fear or apprehension of attack. Here, if we assume that the wife's state of mind just prior to her death was properly an issue, that she did not go home, when coupled with other evidence, might tend to establish the fact of her fear and apprehension. It was not subject to the hearsay objection.

Defendant's final three assignments of error all go to the question of the sufficiency of the evidence to support the verdict. In considering this point, we are compelled to view the evidence in a light most favorable to upholding the jury's conclusions, State v. Rivera, Ariz., 381 P.2d 584, and resolve all conflicts in the evidence

and draw all reasonable inferences therefrom against the defendant. Moore v. State, 65 Ariz. 70, 174 P.2d 282.

If the defendant's account of what happened is disregarded, which the jury had a right to do, these facts exist: A deadly weapon, a pistol, was used in the killing, from which malice aforethought could be inferred, State v. Rivera, supra; State v. Preis, supra. The gun was found only inches from defendant's hand upon discovery of the bodies. There was no evidence of a struggle at the scene. There were two shots fired into the deceased wife, one a contact wound. The medical testimony concerning the angle of the wounds tended to discredit defendant's testimony and would be a circumstance tending to show deliberation and premeditation. There was no evidence establishing any considerable provocation which would reduce the homicide to manslaughter. Deliberation and premeditation can be shown from circumstances. State v. Singleton, 66 Ariz. 49, 182 P.2d 920. Here, the circumstances are sufficient to justify the jury's believing that every reasonable hypothesis was excluded other than defendant's guilt. Moore v. State, supra.

There being no error, the judgment is affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and JENNINGS and LOCKWOOD, JJ., concurring.