SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-11-0083-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-CR 09-0903 |
| PETE J. VANWINKLE, | ) | |
| | ) | Maricopa County |
| Appellant. | ) | Superior Court |
| | ) | No. CR2008-113869-001 DT |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Paul J. McMurdie, Judge

**AFFIRMED**
_____

Memorandum Decision of the Court of Appeals, Division One
Filed Mar. 24, 2011

**VACATED**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                    Phoenix
    By   Kent E. Cattani, Chief Counsel
         Criminal Appeals/Capital Litigation Section
         Joseph T. Maziarz, Assistant Attorney General
Attorneys for State of Arizona

MICHAEL J. DEW                                               Phoenix
Attorney for Pete J. VanWinkle
_____

**H U R W I T Z**, Vice Chief Justice

¶1      The question in this case is whether a defendant's post-custody, pre-*Miranda* silence may be used as evidence of guilt.

**I.**

¶2      Petitioner Pete J. VanWinkle and four others — Mike, Joel, Cory, and Gerry — were in Joel's apartment.[1]  VanWinkle shot Mike in the head.  Gerry saw the shooting from the kitchen, confronted VanWinkle, and disarmed him after a struggle.  Cory, who was in the bathroom at the time of the shooting, detained VanWinkle while Joel called 911.  When police arrived, Cory was restraining VanWinkle on the second-floor balcony of the apartment building.

¶3      The police ordered Cory to descend the stairs.  He complied, but exclaimed that VanWinkle was the shooter.  VanWinkle said nothing in response.  The police then ordered VanWinkle down the stairs and handcuffed him.

¶4      At VanWinkle's trial for attempted murder and other offenses, the prosecution introduced evidence of his silence in the face of Cory's allegation and argued to the jury that this was a tacit admission of guilt.  The trial court overruled defense objections that admission of this evidence, and prosecutorial comment on it, violated VanWinkle's Fifth

---

[1]      "We view the facts in the light most favorable to upholding the verdicts." *State v. Chappell*, 225 Ariz. 229, 233 n.1 ¶ 2, 236 P.3d 1176, 1180 n.1 (2010).

2

Amendment privilege against self-incrimination. The jury found VanWinkle guilty on all charged offenses.

¶5 The court of appeals affirmed. *State v. VanWinkle*, No. 1 CA-CR 09-0903, 2011 WL 1086602 (Ariz. App. March 24, 2011) (mem. decision). The court assumed that VanWinkle was in custody when Cory made his accusation, but held that *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), did not apply because there was no police interrogation. *Id.* at *2 ¶¶ 8-9.

¶6 We granted review to resolve an issue of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

**II.**

**A.**

¶7 When a statement adverse to a defendant's interests is made in his presence and he fails to respond, evidence of the statement and the defendant's subsequent silence may be admissible as a "'tacit admission of the facts stated.'" *State v. Saiz*, 103 Ariz. 567, 569, 447 P.2d 541, 543 (1968) (quoting *Ruth v. Rhodes*, 66 Ariz. 129, 135, 185 P.2d 304, 308 (1947)). The defendant must have been able to clearly hear the statement and the circumstances must have been "'such as naturally call for a reply if [the defendant] did not intend to admit such facts.'" *Id.* VanWinkle does not contend that his silence was improperly treated as a tacit admission under the rules of

3

evidence,[2] but rather only that it should have been excluded under the Fifth Amendment.

**B.**

¶8        In *Doyle v. Ohio*, the Supreme Court of the United States held that a defendant's silence after arrest and after being given *Miranda* warnings could not be used against him, even for impeachment purposes.  426 U.S. 610, 617-20 (1976).  The Court found silence under such circumstances "insolubly ambiguous" and possibly "nothing more than the arrestee's exercise of these Miranda rights."  *Id.* at 617.  Six years later, the Court held that post-arrest, pre-*Miranda* silence could be used for impeachment if the defendant testified.  *Fletcher v. Weir*, 455 U.S. 603, 607 (1982) (per curiam); *see also Wainwright v. Greenfield*, 474 U.S. 284 (1986) (holding that a defendant's post-arrest, post-*Miranda* silence cannot be used in the prosecution's case-in-chief); *Jenkins v. Anderson*, 447

---

[2]    Some courts have held in circumstances similar to those here that silence is not admissible as an evidentiary matter. *See, e.g.*, *Weitzel v. State*, 863 A.2d 999, 1004-05 (Md. 2004) (holding that in light of the depiction of *Miranda* warnings in popular culture and the widespread knowledge that statements made in the presence of police will be "used against you in a court of law," silence in the presence of police is too ambiguous to be probative); *People v. DeGeorge*, 541 N.E.2d 11, 13 (N.Y. 1989) (holding that silence in police presence is inadmissible because it is a natural reaction); *Ex parte Marek*, 556 So. 2d 375, 381 (Ala. 1989) ("[T]he accused might well remain silent because he is angry, or frightened, or because he thinks he has the right to remain silent that the mass media have so well publicized.").

4

U.S. 231 (1980) (concluding that the State may use a defendant's pre-arrest, pre-*Miranda* silence for impeachment). No Supreme Court case addresses, however, whether the State's use of post-custody, pre-*Miranda* silence in its case-in-chief violates the Fifth Amendment.

¶9    The State argues that this Court approved this practice in *State v. Ramirez*, 178 Ariz. 116, 125, 871 P.2d 237, 246 (1994). But *Ramirez* did not involve prosecutorial comment on a defendant's silence. Rather, that case considered prosecutorial comment on the defendant's actual statements and demeanor, and the opinion made plain that "[t]he prosecutor did not comment on defendant's post-arrest 'failure to proclaim his innocence' or on defendant's post-arrest silence." *Id.* Although *Ramirez* stated that "[a] prosecutor may . . . comment on a defendant's pre-*Miranda* warnings silence, either before or after arrest," *id.*, that language was dictum. Thus, the question before us is one of first impression in Arizona.

## C.

¶10    We assume arguendo, as did the court of appeals, that VanWinkle was in custody when Cory identified him as the shooter. We agree with the court of appeals that because VanWinkle's silence was not in response to police interrogation, its admission did not violate the *Miranda* rule. *Miranda* created "a prophylactic means of safeguarding Fifth Amendment rights"

5

during custodial interrogation. *Doyle*, 426 U.S. at 617; *see also Dickerson v. United States*, 530 U.S. 428, 432 (2000) (noting constitutional underpinnings of *Miranda*). But the *Miranda* rule is not violated when, as here, the defendant's silence was in response to an accusation made by a civilian unaffiliated with the police before a warning could be given, and there is no indication of any wrongdoing by the police.

¶11 But that does not end the analysis. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. This privilege against self-incrimination is incorporated into the Fourteenth Amendment's due process clause. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). "[T]he right to remain silent derives from the Constitution and not from the *Miranda* warnings themselves." *United States v. Velarde-Gomez*, 269 F.3d 1023, 1029 (9th Cir. 2001) (en banc); *see also State v. Easter*, 922 P.2d 1285, 1290 (Wash. 1996) ("An accused's right to silence derives, not from *Miranda*, but from the Fifth Amendment itself.").

¶12 A defendant has the right to remain silent when it is "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*

6

*v. United States*, 341 U.S. 479, 486-87 (1951).  The prosecution may not comment on a defendant's exercise of his right to remain silent.  *Griffin v. California*, 380 U.S. 609, 615 (1965).

¶13      A majority of the federal appellate courts have held that post-custody, pre-*Miranda* silence cannot be used as evidence of a defendant's guilt.[3]  Most of these cases involve police questioning, and thus implicate *Miranda*'s prophylactic rule.  Two federal courts of appeals, however, have squarely held that post-custody, pre-*Miranda* silence is not admissible in the prosecution's case-in-chief under the Fifth Amendment, even absent police interrogation.  *See United States v. Whitehead*, 200 F.3d 634, 637-39 (9th Cir. 2000); *United States v. Moore*, 104 F.3d 377, 384-90 (D.C. Cir. 1997).  In *Moore*, the court stated that "neither *Miranda* nor any other case suggests that a defendant's protected right to remain silent attaches only upon

---

[3]     The Seventh, Ninth, and District of Columbia Circuits have found post-custody, pre-*Miranda* silence inadmissible.  *See United States v. Hernandez*, 948 F.2d 316, 321-24 (7th Cir. 1991); *United States v. Whitehead*, 200 F.3d 634, 637-39 (9th Cir. 2000); *United States v. Moore*, 104 F.3d 377, 384-90 (D.C. Cir. 1997).  Other circuits have extended that ban to pre-arrest silence.  *See Coppola v. Powell*, 878 F.2d 1562, 1567-68 (1st Cir. 1989); *Combs v. Coyle*, 205 F.3d 269, 280-83 (6th Cir. 2000); *United States v. Burson*, 952 F.2d 1196, 1201 (10th Cir. 1991); *but see United States v. Oplinger*, 150 F.3d 1061 (9th Cir. 1998), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010) (en banc) (per curiam).  The Fourth, Eighth, and Eleventh Circuits have found post-custody, pre-*Miranda* silence admissible.  *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir. 1985); *United States v. Frazier*, 408 F.3d 1102, 1109-11 (8th Cir. 2005); *United States v. Rivera*, 944 F.2d 1563, 1567-68 (11th Cir. 1991).

7

the commencement of questioning as opposed to custody." 104 F.3d at 385. The Ninth Circuit is in accord. *See Whitehead*, 200 F.3d at 639 ("[W]hen the district court admitted evidence of Whitehead's post-arrest, pre-*Miranda* silence . . . it plainly infringed upon Whitehead's privilege against self incrimination.").

¶14    We find persuasive the reasoning of the Ninth and District of Columbia Circuits. The Fifth Amendment gives a person the right to remain silent once in custody, even if *Miranda* warnings have not yet been given. *See Velarde-Gomez*, 269 F.3d at 1029 (noting that *Miranda* warnings are not the "genesis" of the right to remain silent); *Ex parte Marek*, 556 So. 2d 375, 382 (Ala. 1989) ("An individual with the right to remain silent has the right to remain silent *without regard to whether an officer has told him of that right*.").

¶15    The State argues that VanWinkle had the right to remain silent only if under police questioning. But "custody and not interrogation is the triggering mechanism for the right of pretrial silence." *Moore*, 104 F.3d at 385. And, "the Fifth Amendment's protection does not vanish simply because a question is posed or statement made by a third party in the presence of police rather than by the police themselves." *United States v. Yates*, 524 F.2d 1282, 1285 n.8 (D.C. Cir. 1975). When a person is in custody, even if police have not given *Miranda* warnings or

8

begun interrogation, the prosecution's subsequent "comment on the defendant's exercise of his right to silence violates the Fifth Amendment." *Velarde-Gomez*, 269 F.3d at 1029.[4] The right to remain silent would mean little if the consequence of its exercise is evidence of guilt. *See Mitchell v. United States*, 526 U.S. 314, 330 (1999) ("[T]here can be little doubt that the rule prohibiting an inference of guilt from a defendant's rightful silence has become an essential feature of our legal tradition."). The trial court thus erred in admitting evidence of VanWinkle's silence as evidence of his guilt and allowing the prosecution to comment on that silence.

### III.

¶16     The admission of evidence of a defendant's silence and a prosecutor's comment on that silence are subject to harmless error review. *State v. Guerra*, 161 Ariz. 289, 297, 778 P.2d 1185, 1193 (1989). Error is harmless "if the state, in light of

---

[4]     The Fifth Amendment prohibits only compelled self-incrimination. U.S. Const. Amend. V (providing that no one "shall be compelled in any criminal case to be a witness against himself"). It is not intuitively obvious that comment on a defendant's silence amounts to compulsion. Indeed, in dissent in *Griffin*, Justice Stewart argued that the Court had "stretche[d] the concept of compulsion beyond all reasonable bounds." 380 U.S. at 620 (Stewart, J., dissenting). Other justices have expressed similar views. *See Mitchell v. United States*, 526 U.S. 314, 331-40 (1999) (Scalia, J., dissenting); *Jenkins*, 447 U.S. at 241-45 (Stevens, J., concurring in the judgment); *Doyle*, 426 U.S. at 620-36 (Stevens, J., dissenting). The *Griffin* majority, however, rejected Justice Stewart's position, 380 U.S. at 613-15, which has never commanded a majority of the Court.

all of the evidence, can establish beyond a reasonable doubt that the error did not contribute to or affect the verdict." *State v. Valverde*, 220 Ariz. 582, 585 ¶ 11, 208 P.3d 233, 236 (2009) (citation and internal quotation marks omitted).

**¶17**     The State has met that burden here.  The four other men at the scene, including the victim, gave consistent accounts of what happened, each implicating VanWinkle.  All four testified that Cory was in the bathroom, Gerry was in the kitchen, and the other three men were in the living room.[5]  All gave consistent testimony regarding where VanWinkle, Mike, and Joel were sitting in the living room and what was happening just before the shooting.  Gerry testified that he saw VanWinkle shoot the victim.  Joel testified that he saw VanWinkle holding the gun immediately after he heard the gunshot.  And police officers testified without objection that both Joel and Cory had identified VanWinkle as the shooter to police at the scene.  When police arrived, VanWinkle's holster, which he was wearing, was empty and his gun was on the living room floor.  Ballistics tests positively identified VanWinkle's gun as having fired the shot that wounded the victim.

**¶18**     While in jail, VanWinkle told an inmate that he had shot Mike because he "wanted to kill somebody to see how it

---

[5]     Although Mike testified that he did not remember being shot, he recalled clearly the events leading up to the shooting.

10

fe[lt]." VanWinkle also called Cory from jail apologizing for the shooting and asked Cory not to testify against him. And, VanWinkle did not object at trial to the introduction of Cory's accusation at the scene that VanWinkle was the shooter, but only to the evidence of VanWinkle's subsequent silence. Cory testified at trial, and VanWinkle chose not to cross-examine him about his statement.

¶19 Under the facts of this case, we find beyond a reasonable doubt that the evidence of VanWinkle's silence in the face of Cory's accusation and the prosecutor's comment on that silence did not contribute to or affect the verdicts.[6]

#### IV.

¶20 For the reasons above, we hold that the admission of post-custody, pre-*Miranda* silence and prosecutorial comment on such silence violate a defendant's constitutional right to remain silent. Accordingly, we vacate the decision of the court of appeals, but affirm VanWinkle's convictions and sentences because we find the error in this case harmless.

_____
Andrew D. Hurwitz, Vice Chief Justice

---

[6] We therefore need not address the State's contention that VanWinkle was not in custody when Cory made his accusation.

11

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice